IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-38c |
| | ) | (Judge Sweeney) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:

STEPHEN SKUBEL
MARC KASISCHKE
JOHN SPITTELL
Office of General Litigation
Department of Energy

July 5, 2018

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

TARA K. HOGAN
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 616-2228

Attorneys for Defendant

**TABLE OF CONTENTS**

ISSUE PRESENTED ................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

    I.     Congress Has Not Appropriated Funds For Economic And Impact Assistance .... 2

    II.    Congress Has Specifically Restricted DOE From Using Appropriations For Economic And Impact Assistance Payments ........................................................... 5

    III.   South Carolina's Argument Concerning Reprogramming Is Irrelevant In Light Of The Restrictions Congress Placed On DOE's Appropriations ............................. 10

CONCLUSION ........................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Pages(s)**

*Cannon v. University of Chicago*,
    441 U.S. 677 (1979) ................................................................................................................ 4

*Greenlee County v. United States*,
    487 F.3d 871 (Fed. Cir. 2007) ................................................................................................ 2

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) .............................................................................................................. 11

*Thompson v. Cherokee Nation*,
    334 F.3d 1075 (Fed. Cir. 2003) ............................................................................................ 11

**Statutes and Public Laws**

31 U.S.C. § 1301(a) ..................................................................................................................... 12

50 U.S.C. § 2566(a) ....................................................................................................................... 3

50 U.S.C. § 2566(d) ..................................................................................................... 1, 2, 4, 9, 12

50 U.S.C. § 2566(g) ....................................................................................................................... 3

Energy and Water Development Appropriations Act, 2006,
    Pub. L. No. 109-103, 119 Stat 2247 (Nov. 19, 2005) ............................................................ 4

National Defense Authorization Act for Fiscal Year 2016,
    Pub. L. No. 114-92, 129 Stat 726 (Nov. 25, 2015) ............................................................ 3, 6

National Defense Authorization Act for Fiscal Year 2017,
    Pub. L. No. 114-328, 130 Stat 2642 (Dec. 23, 2016) ............................................................ 3

Consolidated Appropriations Act, 2016,
    Pub. L. No. 114-113, 130 Stat 2242 (Dec. 18, 2015) .................................................. 5, 6, 7, 11

Consolidated Appropriations Act, 2017,
    Pub. L. No. 115-31, 131 Stat. 135 (May 5, 2017) ...................................................... 5, 6, 7, 11

National Defense Authorization Act for Fiscal Year 2018,
Pub. L. No. 115-91 (Dec. 12, 2017) .......................................................................................... 3

**Other Authorities**

Principles of Federal Appropriations Law, 4th ed. (2016) ................................................... 5, 6, 7, 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-38c |
| | ) | (Judge Sweeney) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the United States, respectfully submits its reply in support of its cross-motion for summary judgment.  Judgment for the United States should be granted because there is no genuine dispute of material fact and the State of South Carolina cannot demonstrate that Congress made appropriations available to the Department of Energy (DOE) for economic and impact assistance payments pursuant to 50 U.S.C. § 2566(d)(1).

As we demonstrated in our opening brief, the State of South Carolina cannot establish that the United States is liable for economic and impact assistance payments for calendar years 2016 and 2017, because Congress made no appropriations available for DOE to make any such payments.  Because the United States is not liable in the absence of available appropriations, the Court must dismiss the complaint.

ARGUMENT

I. Congress Has Not Appropriated Funds For Economic and Impact Assistance

South Carolina's complaint arises out of the statutes covering the Mixed-Oxide Fuel (MOX) Fabrication Facility, currently under construction at the Savannah River Site (SRS). Congress set forth a series of deadlines for reaching certain milestones in the construction and operation of the MOX facility. If the MOX production objective is not achieved on time, the statute provides that DOE must either remove defense plutonium from SRS or make "economic and impact assistance" payments, subject to appropriations, to South Carolina. *Id.* § 2566(d). The full statute provides that:

> If the MOX objective is not achieved as of January 1, 2016, the Secretary shall, subject to the availability of appropriations, pay to the State of South Carolina each year beginning on or after that date through 2021 for economic and impact assistance an amount equal to $1,000,000 per day, not to exceed $100,000,000 per year, until the later of – (A) the date on which the MOX production objective is achieved in such year; or (B) the date on which the Secretary has removed from the State of South Carolina in such year at least 1 metric ton of defense plutonium or defense plutonium materials.

50 U.S.C. § 2566(d)(1).

Congress qualified any right to economic and impact assistance payments through its use of the qualifier "subject to the availability of appropriations" in the statute. Thus, the parties agree that DOE's liability, if any, is limited to the appropriations made available by Congress. *See* Pl. Resp. at 6; *Greenlee County v. United States,* 487 F.3d 871, 878 (Fed. Cir. 2007).

There is also no dispute that Congress has not appropriated any funds for the purpose of economic and impact assistance payments. The fact that Congress elected *not*

2

to make an appropriation available for the purpose of economic and impact assistance payments in either the Fiscal Year (FY) 2016 or FY 2017 Consolidated Appropriations Acts (CAA) is pertinent to the Court's inquiry. Combined with Congress' restrictions on DOE's use of its appropriations, the lack of an appropriation for the purpose of economic and impact assistance payments precludes a finding of liability.

Congress is well aware of the status of the MOX fuel fabrication project and is closely involved in the Nation's plutonium disposition strategy. Congress requires DOE to submit yearly reports concerning the status of the MOX facility construction and whether the MOX production objective has been met. 50 U.S.C. § 2566(a); (g). Because of sharply rising cost estimates for the MOX project, DOE's FY 2015 budget request proposed to place the project in cold standby, and DOE proposed to terminate the project in both its FY 2017 and FY 2018 budget requests. Nonetheless, under the section heading "Disposition of Weapons-Usable Plutonium" of the relevant National Defense Authorization Acts, Congress directed DOE to continue construction of the MOX facility. National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114-92, § 3119; National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328 § 3116 [1] In the explanatory statements accompanying the relevant appropriations acts, Congress expressed its intent to limit the amount of appropriated funds that DOE may use

---

[1] In the FY 2018 NDAA, Congress granted DOE the ability to waive the requirement that appropriations be spent on construction of the MOX facility, provided that the Secretary commit to removing plutonium from South Carolina and certify to Congress that certain requirements for an alternative approach to MOX were met. Pub. L. No. 115-91, § 3121(b)(1). On May 10, 2018, the Secretary of Energy submitted to the congressional defense and appropriations committees the notifications pursuant to Section 312. South Carolina has sued the Department of Energy in district court to enjoin it from stopping construction of the MOX facility.

to explore alternative methods of disposing of excess weapons-grade plutonium.  Pl. Appx180 (placing a $5,000,000 ceiling on spending for consideration of "dilute and dispose alternative to" MOX facility); Pl. Appx233 (placing $15,000,000 ceiling).

Given Congress' close direction and oversight of the MOX project, Congress' failure to specifically provide or authorize funds for economic and impact assistance payments to South Carolina is highly probative of its intent.  Congress is presumed to be aware of the legislation that it has passed.  *See Cannon v. University of Chicago*, 441 U.S. 677, 696-97 (1979). In section 313 of the Energy and Water Development Appropriations Act, 2006, Congress amended 50 U.S.C. § 2566(d) to place a limit on economic and impact assistance payments: such payments would only be made "subject to the availability of appropriations."  That limitation was placed in the statute in 2005; thus, South Carolina cannot credibly argue that the economic and impact assistance payments are a new statutory obligation that has arisen after the appropriations acts became effective.  Pl. Resp. at 10-11.

South Carolina suggests that Congress did not make a specific appropriation for economic and impact assistance payments because DOE did not include specific requests for the payments in its budget requests.  Pl. Resp. at 9.  Based on this fact (and making unwarranted inferences from pending, unrelated, litigation), South Carolina accuses DOE of acting in "bad faith."  Pl. Resp. at 1-2; 9.  These accusations are unfair, and, more importantly, unhelpful to the Court's resolution of the dispute before it.

To the extent South Carolina suggests that DOE had a legal duty to request specified appropriations, South Carolina offers no support for this proposition.  That proposition, further, runs counter to the constitutional principle that Congress is the

branch of government responsible for enacting the regular appropriations acts and other laws that control spending and receipts. It is "for Congress to determine the purposes for which an appropriation may be used." PRINCIPLES OF FEDERAL APPROPRIATIONS LAW, 4th edition at 3-10 (2016) (GAO Redbook). As demonstrated by Congress' direction to continue construction of the MOX facility, Congress has not hesitated to direct DOE to accomplish certain programs and goals through the appropriations process, and has not needed a request from DOE to do so.

II.  Congress Has Specifically Restricted DOE From Using Appropriations For Economic and Impact Assistance Payments

South Carolina has also failed to rebut our argument that Congress has restricted DOE's appropriations in a way to preclude use of those appropriations for economic and impact assistance payments. South Carolina's argument depends on whether DOE has unrestricted lump sum appropriations available from which it could issue economic and impact assistance payments. Pl. Resp. at 8; 12.

The relevant inquiry, however, is not whether DOE has lump sum appropriations, but whether Congress restricted the use of DOE's appropriations in a way that precludes use of those funds to make economic and impact assistance payments. Thus, South Carolina's identification of the "Defense Nuclear Nonproliferation" account in both CAAs as a lump sum appropriation does not end the inquiry. Pl. Appx157 (2016 CAA); Pl. Appx180 (2017 CAA).

As we previously demonstrated, Congress has restricted DOE's ability to use lump sum appropriations through the incorporation by reference of the explanatory statement control tables pursuant to § 301(d) of each of the relevant appropriations acts. Def. Cross-Mot. at 13-14. South Carolina acknowledges the existence of § 301(d), Pl.

5

Resp. at 11-12, but continues to avoid its import in reading the two appropriations acts. Section 301 limits the availability of funds by commanding that DOE's appropriated funds be spent in accordance with the Congressional table: "the amounts made available by this title shall be expended as authorized by law for the programs, projects, and activities specified in the 'Final Bill' column" contained in an explanatory statement which accompanies each Act.  Pl. Appx162; Pl. Appx216.

Section 301(d) limits not only the amounts of funds within individual appropriations accounts, but also the purpose for which those funds may be used.  The Congressional tables in the explanatory statements identify with certainty the amounts and purposes for which these appropriations are available and serve as legally binding restrictions on the agency's appropriations.

Congress appropriated funding for Defense Nuclear Nonproliferation with the intent that certain funds be spent on "Nonproliferation construction" at "MOX Fuel Fabrication Facility project, SRS."  Pl. Appx195; Pl. Appx251.  Congress advised that it intended funding related to the MOX facility to be used for "construction and project support activities."[2]  Pl. Appx180 (2016 CAA); Pl. Appx233 (2017 CAA).  "If a proposed use of funds is inconsistent with the statutory language, the expenditure is improper."  GAO Redbook (4th ed.) at 3-11.  South Carolina concedes that DOE may not lawfully use any of these funds related to the MOX facility to remit economic and impact assistance payments.  Pl. Mot. at 20 fn. 8.

---

[2] "Project support activities" are defined as "activities that support the design, long-lead equipment procurement, and site preparation of the MOX facility."  2016 NDAA § 3119(c)(2).  Economic and impact assistance payments do not qualify as "project support activities."

South Carolina continues to rely upon the "Material disposition" control line within the Defense Nuclear Nonproliferation account. *See* Pl. Appx195; Pl. Appx251. South Carolina incorrectly characterizes this control line as a lump sum appropriation. In fact, it is best characterized as coexistent with a "program, project, or activity," mentioned in § 301(d), the "most specific level of budget items identified in" the CAA and the explanatory statement accompanying the CAAs. Pl. Appx166; Pl. Appx220.

By virtue of the incorporation by reference of the control table, Congress restricted amounts appropriated for Defense Nuclear Nonproliferation activities at levels of $86,584,000 and $143,833,000 in FY 2016 and FY 2017, respectively, for the purposes of carrying out Material disposition activities. Pl. Appx195; Pl. Appx251. Again, Congress did not provide that funds from this control line may be used for payment of economic and impact assistance. Nor does anything in either the House or Senate Reports accompanying the FY 16 or FY 17 appropriation acts reflect an express or implied authorization to use the appropriated funding restricted for the Material disposition program for economic and impact assistance payments.

Nonetheless, South Carolina relies upon application of the "necessary expense" doctrine to assert that such payments would be legally permissible. Pl. Resp. at 13. The "necessary expense" doctrine "permit[s] an agency to obligate an appropriation made for a specific object for expenses necessarily incident to accomplishing that object." GAO Redbook at 3-20. In order to be considered a "necessary expense," "[t]he expenditure must bear a logical relationship to the appropriation sought to be charged. In other words, it must make a direct contribution to carrying out either a specific appropriation or

an authorized agency function for which more general appropriations are available." GAO Redbook at 3-16.

Thus, the Court must consider whether economic and impact assistance payments are a necessary expense within the scope of the Material disposition control line. South Carolina has not demonstrated that economic and impact assistance payments would meet that requirement.

Economic and impact assistance payments would not directly contribute to carrying out the Material disposition control line. The purpose of the Material disposition control line can be determined by considering DOE's budget requests and the language in the congressional reports accompanying each act. The purpose of the line is "disposing of surplus weapon-grade plutonium and highly enriched uranium (HEU) in the United States, working with Russia to dispose of Russian surplus weapon-grade plutonium under the U.S.-Russia Plutonium Management and Disposition Agreement (PMDA), directing the international plutonium management initiative, and managing the provision of nuclear material for peaceful uses."[3]

Economic and impact assistance payments do not directly contribute to carrying out the purpose of the Material disposition control line. As a matter of common sense, economic and impact assistance payments to the State would not contribute to completion of the MOX facility, the processing of plutonium into MOX fuel, meeting the MOX

---

[3] Dep't of Energy, *FY 2016 Congressional Budget Request*, at 551, available at https://www.energy.gov/sites/prod/files/2015/02/f19/FY2016BudgetVolume1_1.pdf and Dep't of Energy, 2017 Congressional Budget Request at 465, *available at* https://www.energy.gov/sites/prod/files/2016/02/f29/FY2017BudgetVolume1.pdf

8

production objective, dispositioning surplus plutonium, or managing plutonium internationally.

Indeed, by diverting funding from necessary non-proliferation activities, use of the Material disposition control line would run counter to the ultimate goal of dispositioning surplus defense plutonium from SRS.  Thus, use of the Material disposition control line to remit economic and impact assistance payments to the State of South Carolina would not contribute directly to purpose of the control line.  These critical non-proliferation activities are necessary to national defense and to meet U.S. commitments.  As such, they plainly do not constitute merely "discretionary projects" as South Carolina implies, such that payment of economic and impact assistance payment could take priority.  Pl. Resp. at 19; *see, e.g.*, 50 U.S.C. § 2567(c) and (d) (requiring DOE to "identify a disposition path" for the plutonium at SRS)).

South Carolina suggests that the defendant has overlooked the purpose of 50 U.S.C. § 2566 in determining whether economic and impact assistance payments could constitute a necessary expense of the Material disposition control line.  Pl. Resp. at 4-5; 14.  In South Carolina's view, section 2566(d)(1)'s placement in the "Proliferation Matters" subchapter of Title 50 reflects congressional intent that economic and impact assistance payments "contribute to the purpose" of plutonium disposition.  But Congress did not simply appropriate unrestricted funds for defense non-proliferation or plutonium disposal.  It directed in the statute that DOE spend appropriated funds in specific ways and in specific amounts that preclude economic and impact assistance payments.  And, as we have demonstrated, economic and impact assistance payments would not assist in accomplishing the purpose of the Material disposition control line.

9

Even accepting that the payments would directly contribute to an authorized agency function, there are no "general appropriations" available from which DOE could remit economic and impact assistance payments. *See* Pl. Resp. at 14-15. Congress did not leave unrestricted the Defense Nuclear Nonproliferation appropriation account. Rather, as explained above, through section 301(d), Congress restricted the purpose and amounts of DOE's appropriations. And, because economic and impact assistance payments do not directly contribute to either of the two control lines under which the MOX project falls, the "necessary expense" doctrine does not assist South Carolina in demonstrating that it is entitled to relief.

Finally, through selective quotations of reports to Congress, South Carolina suggests that DOE has previously embraced a broader scope of the purpose of the Material disposition control line. Pl. Resp. at 18-19. Referencing a report to Congress, South Carolina suggests that DOE stated its intent to use carryover funds from prior year appropriations to "advance[] a number of important *goals*." Pl. Resp. at 18 (citing Pl. Ex. 1 at p. 5) (emphasis added by plaintiff). The "important goals" referred to downblending HEU, or highly enriched uranium, an activity separate and apart from the plutonium disposition program. South Carolina's citation is not helpful to resolution of this matter.

III.     South Carolina's Argument Concerning Reprogramming Is Irrelevant
         <u>In Light Of The Restrictions Congress Placed On DOE's Appropriations</u>

Finally, South Carolina continues to argue that DOE had an obligation to "reprogram" funds within the Defense Nuclear Nonproliferation Account to cover economic and impact assistance payments. Pl. Resp. at 16. South Carolina relies upon *Thompson v. Cherokee Nation of Oklahoma*, 334 F.3d 1075 (Fed. Cir. 2003) for the

proposition that an agency is required to reprogram in order to meet debts or obligations. Pl. Resp. at 17.

That proposition, of course, supposes that Congress has placed no limits on DOE's reprogramming authority. *Cherokee Nation*, 334 F.3d at 1086; *Lincoln v. Vigil*, 508 U.S. 182, 192 (1994). As is abundantly clear, that is not the case. As South Carolina acknowledges, the FY 2016 and FY 2017 CAAs prohibit DOE from reprogramming funds to create, initiate, or eliminate a "program, project or activity." 2016 CAA § 301(f)(1); 2017 CAA § 301(f)(1). Thus, DOE may shift funds (up to a certain amount) between programs, projects, or activities, but it may not use reprogramming to create new programs, projects, or activities.

Congress specifically restricted the purpose of the funds identified in the "99-D-143 Mixed Oxide (MOX) Fuel Fabrication Facility, SRS" control line to construction. Pl. Appx180. Thus, any funds reprogrammed to that control line would be subject to that limitation. Similarly, funds reprogrammed to the "Material disposition" control line would still not be available for economic and impact assistance payments. DOE would need to create a new "project, program or activity" in order to reprogram funds for economic and impact assistance payments, which Congress has prohibited it from doing.

Similarly, the fact that DOE had carryover funds from prior appropriations does not necessarily mean that it may use carryover funds without restriction. *See* Pl. Resp. at 17-18. As we previously explained, since FY 2012, Congress has restricted how DOE may spend its appropriations through a provision similar to § 301(d). Def. Resp. at 12-13. Nothing in the report that South Carolina cites indicates that DOE has carryover

funds sufficiently unrestricted such that they are available for economic and impact assistance payments.

South Carolina highlights $649 million in uncosted and unencumbered funds relating to the "Defense Nuclear Nonproliferation" account to carry over from 2015 to 2016. Pl. Resp. at 18. But those funds were, and remain, subject to any restrictions placed on them by Congress. Funds appropriated for a particular purpose may be used for that purpose and no other. *See* 31 U.S.C. § 1301(a).

By statute, Congress limited any payment of economic and impact assistance to "the availability of appropriations." 50 U.S.C. § 2566(d)(1). By not making appropriations available to DOE for this purpose, Congress determined that no economic and impact assistance should be paid to South Carolina. Congress may very well make appropriations available for this purpose in the future, but until it does so, the United States has no liability for any failure to pay economic and impact assistance payments.

## CONCLUSION

For these reasons and the reasons identified in our cross-motion for summary judgment, we respectfully request that the Court enter judgment in favor of the United States and dismiss the complaint.

Respectfully Submitted,

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

| | |
|---|---|
| OF COUNSEL: | /s/Tara K. Hogan |
| | TARA K. HOGAN |
| STEPHEN SKUBEL | Assistant Director |
| MARC KASISCHKE | Commercial Litigation Branch |
| JOHN SPITTELL | Civil Division |
| Attorneys | Department of Justice |
| | PO Box 480, Ben Franklin Station |
| Department of Energy | Washington, D.C. 20044 |
| | Tele: (202) 616-2228 |
| | |
| July 5, 2018 | Attorneys for Defendant |